The next matter, No. 25-1258 and No. 25-1265, the City of Boston et al. v. OptumRx, Inc. et al. At this time, would counsel for the appellants, Cross Appley City of Boston, Attorney Liu, please come to the podium and introduce yourself on the record to begin. May it please the court, Mimi Liu on behalf of the City of Boston, and I would like to reserve eight minutes for the argument on the appeal and three minutes for rebuttal. And my colleague, Fred Baker, will be arguing the Cross Appeal, and we reserve four minutes for his argument. Okay. Please proceed. The opioid epidemic caused by an oversupply of opioids. Counsel, this court has probably as much experience as your law firm has with the opioid epidemic. Can you get to the issues that are on appeal? This is not a jury trial. Absolutely, Your Honor. The well-pleaded facts viewed in the light most favorable to the city do not show beyond doubt that the claim asserted is out of time. First, with respect to the continuing nuisance argument, there are more than 20 paragraphs, it is not disputed, in the complaint that support the continuing nuisance claim. Under Massachusetts law, it is sufficient to allege continuing or ongoing conduct to support a continuing nuisance. The Supreme Court of Massachusetts, in Prentiss, said the damage to the plaintiff was caused by this raising of the dam and, quote, its continuance. In 68 Devonshire, the court said the discharge of water from the defective gutter, quote, continued down to the time the action was brought. These are the same allegations made over and over in the city's complaint. But if, under Massachusetts law, more specificity were required, the complaint also alleges specific recent facts, including recent collusion between the PBMs and the opioid manufacturers, recent contract amendments, recent renegotiations of those contracts, all for rebates and fees in exchange for preferred placement on the formulary. In addition, the complaint specifically alleges, at paragraphs 33 and 422, that the PBMs never, never, up to the time of the filing of the complaint, imposed meaningful controls and restrictions on the supply of opioids. The court need not reach the fraudulent concealment issue if it finds that the district court erred in holding that there is no continuing nuisance. But if the court were to reach the fraudulent concealment argument, it is clear that the defendant's fraudulent concealment tolls the statute of limitations under Massachusetts law. Here, the complaint alleges, and the court found, quote, active fraud. Under Massachusetts law, if you have either active fraud or a breach of the fiduciary duty to disclose, the discovery standard is actual knowledge. And actual knowledge is both distinct and higher than the reasonable diligence standard imposed under federal fraudulent concealment law and under Massachusetts common law discovery rule. What is the actual knowledge standard? The Massachusetts Supreme Court is clear that there can be no substantial doubt as to the existence of the wrongdoing. And actual knowledge only is imputed to the plaintiff, here the city, in instances where the city is provided with the means to ascertain the facts. The most recent Supreme Court of Massachusetts decision,  On that point, the city sued the opiate manufacturers in 2018. Thereafter, there were multi-district litigation cases about two years later against the PBMs. The city certainly knew about both of those things. The city also had access to all of the multi-district litigation discovery files. So what is the argument that the city did not have the means to know that this potential cause of action existed? So with respect to the earlier cases, the courts are clear, and we cite this in our brief, that notice of the harm, the opioid epidemic, does not mean that the city was aware that the harm was also caused by these defendants. Even under a reasonable discovery standard, the courts have said that is not sufficient to put the city on notice. With respect- The MDL cases were explicit about the conspiracy theory. I don't understand how the city of Boston, who filed suit claiming the same sort of injuries from the opioid epidemic in 2018, and was clearly monitoring what was going on, could disclaim any knowledge of the MDL litigation. So, Your Honor, let's look at the MDL litigation. The early 2018 cases, which even if the city is imputed to be aware of those cases- I'm sorry, are you denying that the city of Boston lawyers had any knowledge of the MDL litigation? We are denying, Your Honor, that there is a factual dispute whether the city of Boston was aware of the few cases that amended the complaints and added a handful of allegations against the PBMs in 2018. The discovery that led the city to be on notice of its claims, resulting in 500 paragraphs of allegations in the city's complaint against the PBMs was produced by the PBMs into the MDL in 2023. At that point, many government enforcement entities, along with the city, including every single state attorney general to sue the PBMs, then sued, relying on that evidence that was provided into the MDL. The sparse complaints that were early filed, even under a constructive knowledge standard, there is a factual question whether they provide sufficient evidentiary basis to support the city's claims. The district court took a look at that, and didn't find there was any factual dispute as to that. I understand you say there's a factual dispute as whether the city of Boston lawyers were competent enough to look at perfectly obvious sources. That is different than the disclosures in the early MDL litigation. So, Your Honor, there needs to be, under the actual knowledge standard, no substantial doubt. If you look at the handful of allegations in those early complaints, there is very little evidentiary basis in those complaints to support the city's claim here. In fact, one of the defendants, OptumRx, in 2021, specifically said about those early complaints, quote, they have no discernible evidentiary basis. It is a question of fact whether or not the city believed, even under a constructive knowledge standard, there were sufficient facts in those complaints to support its claims here. And I would just note that under the Transpect Truck case relied on by defendants, the First Circuit has clearly said, you look to the date that the plaintiff states it learned of the facts alleged in the complaint. And here the complaint clearly alleges it was the new information, the new documents in 2023 that resulted in the 500 paragraph allegations against the PBMs, just as was the case for all of the state attorneys general who in 2024 also sued the PBMs. My time is up. Thank you. Counselor, let me ask you, you mentioned other attorney generals have sued. Are you aware of in any other state or any other federal proceeding where an argument like the one you're making has been found to be with merit by the court and the statute of limitations not run out? Yes, every case to hear these same arguments, even under a constructive knowledge standard, has held that the statute of limitations has not run. The Alaska case that we cite, the King County case that we cite, the Ohio County Commission case we cite, in all of these cases, the PBMs made the same argument. And in Alaska, it was in federal court. It was under a federal reasonable diligence standard, not even the actual knowledge standard here. And the court said, these are questions of facts. We're gonna leave this for summary judgment or trial. Same with King County, same with Ohio County. There has been no court to date that has held that the later filed complaints have been out of time as a result of the statute of limitations. So the federal court message is the only one that has dismissed, as far as you know? As far as I know, Your Honor, yes, that is correct. And that is under the higher actual knowledge standard applied by Massachusetts courts, not even the lower constructive knowledge standard applied in the other cases. Okay, thank you. Thank you, Counsel. At this time, would Counsel for the Appellant, City of Boston, Attorney Baker, please introduce himself on the record to begin. Good morning. May it please the Court, Fred Baker for the City of Boston. I'll be handling the argument regarding the cross appeal. In my limited time, I'd like to draw the Court's attention to a few high-level points on the material disadvantage disqualification issue. All of these points, we believe, underscore that the Court's conclusion was not an abuse of discretion. First, there is nothing in the text of Rule 1.11c supporting Optum's overly expansive reading that the test for material disadvantage is mere relevancy to the case at hand. Rather, the operative question for whether there is a material disadvantage is whether the lawyer's access to the information could put the opposing counsel, or opposing party, at a material disadvantage compared to the position it would occupy if plaintiff had different counsel. That's the question that needs to be answered. Here, Optum's been under an obligation since 2018 to produce materials at issue into the MDL document depository. Accordingly, every counsel who signs the MDL protective order, including the city's other counsel, other than Motley Rice, have access to these same materials. So, by definition, there can be no material disadvantage. The second point I'd like to make is Optum's arguments regarding the material disadvantage do not square with the case law applying the law or the rule to the facts at issue. In addition to the trial court below, every court that has considered this issue has held that there is no material disadvantage. The MDL court in Northern District of Ohio, the Sixth Circuit, the court in L.A. County, that was a superior court in state court, the Maryland District Court in Anne Arundel County, all of those courts have looked at precisely this issue and come to the conclusion that there is no material disadvantage. Third, Optum's overly expansive reading of Rule 1.11c is inconsistent with the policies and purposes of the rule. Comment forward to the rule makes clear that the rule represents a balancing of interests. As explained in ABA Opinion 409, the rule is therefore to be narrowly and precise, it is narrowly and precisely drawn. Moreover, an overly expansive reading could allow the rule to be improperly used to tactical advantage and to harass opposing counsel. And indeed, the Sixth Circuit made precisely that observation about Optum's disqualification effort. Fourth, Optum's argument that beyond the documents there is other information that Motley Rice gained access to and that would create a material disadvantage is in the words of the California Superior Court Judge who looked closely at this question, vague, amorphous, and speculative. There simply is no there there. As to the other three requirements under Rule 1.11c, those elements Judge Saras did not reach. The city will rest on his papers with respect to those issues and simply put, the trial court's ruling on disqualification should be affirmed. And with that, I'd conclude unless the court has any questions. Thank you, counsel. Thank you, counsel. At this time, would counsel for the Appalese Express Scripts please introduce himself on the record to begin. Thank you, Your Honor. And may it please the court, Chris Michel on behalf of Express Scripts. I will address the city's cross appeal. The dismissal order on behalf of both Appalese and Mr. Blackwell will address Optum's cross appeal, the city's appeal. As the district court carefully and correctly explained, this is a straightforward case under the statute of limitations. Boston suffered its asserted injuries more than a decade ago. It sued the opioid manufacturers and distributors for those injuries in 2018. At least 74 other municipalities sued pharmacy benefit managers for similar injuries around the same time. But the city did not sue the Appalese in this case until 2024, long after the three year statute of limitations had run. The city attempts to excuse its untimely claim through two exceptions, but neither applies here. The city invokes the continuing tort doctrine, but it did not plead any actionable misconduct within the limitations period. The city also asserts fraudulent concealment, but the evidence is overwhelming that the city knew or at least had the means to acquire the facts supporting its claim well before it accrued in 2021. What evidence, if you could summarize, what evidence there being that the city knew? So I would start with the lawsuit that the city, well, new of its injury, I would start with the allegations and the complaint going back to the early 2010s in which the city explained the measures it was taking to address the opioid epidemic. But of particular relevance here, I would highlight the lawsuit that the city filed against the opioid manufacturers and distributors in 2018. And then the 74 lawsuits that other municipalities filed against the pharmacy benefit managers in 2018 and 2019. There's a list of those in the complaint, in the joint appendix at pages 801 to 807. Between those two, the city sort of had covered both sides of the V. It had brought a claim as a plaintiff based on opioid related injuries. And it was well aware that other plaintiffs had brought claims against these defendants based on the same kinds of allegations that the city is alleging here. I think that alone suffices to show that the city had actual knowledge or means to acquire knowledge, but you don't have to stop there. There are also allegations in the complaint that it, quote, has not gone unnoticed in Massachusetts what the pharmacy benefit managers practices were. That's paragraph 16 of the complaint. If you're looking to see whether the city was on notice, an allegation in its own complaint that it has not gone unnoticed what the pharmacy benefit managers were doing seems like strong evidence that the city itself knew even by its own account. There's also an allegation in the complaint, this is paragraphs 200 and 201, citing an article from 2016 about the pharmacy benefit managers formulary practices, which are the core of the complaint in this case. Not only was that available publicly in 2016, well before the statute of limitations period, but that was also cited in the Webb County complaint, which was one of the first complaints filed against pharmacy benefit managers in the multi-district litigation back in 2018, also well before the limitations period. In addition, there are allegations in the complaint, paragraph 123, for example, referring to a CMS report, that's the Center for Medicare and Medicaid Services, in 2011, that the city alleges put the entire healthcare industry on notice about the need to address what they describe as over-dispensing and over-prescribing in opioids. But the city's position must be that somehow everyone else was on notice from that, but the city itself was not on notice. I think any of those independently. What do you say to her argument that the MDL litigations from 2018 were not specific enough as to, she used the term evidentiary support, whether that's appropriate in a notice situation, I'm not sure. But she says it just wasn't adequate to make the city aware that they had a potential claim. I think several responses to that, Judge Lynch. First, as a legal matter, this court, for example, in the Epstein case, Epstein versus C.R. Bard, has made clear that in order to have sufficient knowledge, the plaintiff does not have to have every single fact that is available to bring the later claim. And that makes sense as a matter of logic because otherwise there would be no independent content to the means to acquire prong of the test as distinguished from the actual knowledge prong of the test. I think there was more than enough in the 2018 complaints, all 74 of them taken collectively for the city to learn the facts that underlie its claims here, which is the test. Just to take the Webb County case for complaint, for example, the allegations about the PBMs are at J.A. 65 to 70. That's five pages in the complaint in which the Webb County, a similarly situated municipality, alleged that the PBMs back in 2018 had taken the same kinds of misconduct that the city in this case alleges. And under longstanding precedent from both this court and the Supreme Court Judicial Court of Massachusetts, that readily suffices to meet the means to acquire standard. In fact, there are cases, a number of cases that rely on consulting with lawyers and looking at public dockets. The Maggio case from this court, for example, relies in part on the plaintiff's failure to consult a litigation document that was served in a lawsuit against his own brother. The Seeger-Tomschitz case from this court, that's a case about Nazi era art. The court relied in part on publicly available information about the background of the art in museums. The Sanger case from this court involved a copyright claim. The court relied in part on the publicly available copyright information. And the Salywus case is another example. This case fits comfortably within those familiar examples in which the city, at a bare minimum, should have looked at the 74 complaints on the MDL docket. And as we described further in our papers, there's even more beyond that. The fact that the 2018 case for the city was filed by the same council that were in the MDL and that later, in fact, filed complaints against pharmacy benefit managers in the MDL. I don't think it's absolutely necessary to rely on the council as the link in this case, but it's just further corroboration that by any fair understanding of the means to acquire standard, there was plentiful means to acquire in this case. Maybe just a word on the continuing nuisance prong because my friend for the city brought that up. I think the critical point there is that, as this court and the Supreme Judicial Court have emphasized, there must be an anchoring violation. There must be an allegation of misconduct within the limitations period. And what the city pointed to when the district court directly asked this question at the hearing, and this is at JA 853, all the city pointed to was one allegation in its complaint. That was paragraph 422 of the complaint in which it simply conclusively alleged that there was ongoing unreasonable conduct that was part of the public nuisance. That's about as conclusory as it gets. And under cases like Morales-Cruz from this court, that is not enough to make out a factual allegation. What about the fraudulent concealment prong of their argument? So fraudulent concealment, I think was what I was addressing earlier, that in order to show fraudulent concealment. Well, the district court, if I remember correctly, actually found that the pleading stated a possible claim of fraudulent concealment. I assume you disagree with that. Yes, Judge Lynch, let me address that directly. First, we do disagree with that. We've addressed that in our brief. We do think that would be an alternative basis for this court to affirm. Fraudulent concealment, as I think everyone agrees, must be alleged with particularity under Rule 9b. And in particular, as the Supreme Judicial Court has explained in cases like Connolly and Maloney, fraudulent concealment must include an attempt to conceal the material from the plaintiff. In this case, this is one of the rare places where we respectfully disagree with the district court. All the district court relied on was public statements that the defendants made to the public generally, nothing that could, in our view, come close to satisfying the Rule 9b standard. But I do want to emphasize the court does not need to address that issue because even if fraudulent concealment was adequately pled, as the district court then very carefully and persuasively explained, under Massachusetts law, the fact that the city had actual knowledge or the means to acquire the facts underlying its complaint is an independent reason why the fraudulent concealment doctrine does not toll the statute of limitations, even assuming that there were adequate allegations of fraudulent concealment in the complaint. Your opponent, to use old-fashioned language, your sister at the law said that it has to be beyond any possible doubt. Is that actually the standard under Massachusetts law? I don't think that's the standard. I think that it's the typical Rule 12b6 standard. If you look at the Davalos case, which is a case from the Supreme Judicial Court that we cite in our brief, it's a recent decision. Footnote 10 in that decision, it's on page 761, actually observes that these kinds of issues should be decided as early as possible under the appropriate rules in the proceeding to avoid delaying resolution and wasting the party's time. This court in the Epstein decision, Epstein v. C.R. Bard, applying Massachusetts law, this is at page 188, said it was, quote, entirely appropriate at the motion to dismiss stage where the allegations leave no doubt that the claim is time barred. Now, I think leave no doubt is essentially a shorthand for, you know, no plausible allegation, and there are numerous other cases the district court cited some at addendum 8. We cited some at brief 13, the Salawis case, the Dodgy case. All of those are cases in which this court has affirmed dismissals at the motion to dismiss stage. That's why courts of appeals have to be extremely careful about how they phrase concepts. I think that's true, Your Honor, but I think, you know, those single snippets could be a bit misleading, but read in context, or particularly all of those cases that I cited, it's the typical 12 v. 6 standard that applies. I might just say one word before I sit down. We do have another alternative basis for affirmance. We don't think the court needs to address that, but we do think it's quite clear under, and the district court did not address this because it dismissed on other grounds, but we think it's quite clear under Massachusetts law that a municipality doesn't have standing to bring this type of claim. As the Supreme Judicial Court said in Sullivan, it's the attorney general that is vested with public, with authority to represent the public and to bring these types of cases. Perhaps you ought to address Judge Helpe's question about how other district courts have handled this, and your sister's reply that none of them have dismissed at the pleading stage. So if I might briefly, Your Honor, a couple of quick responses. One is that many of those dismissal order, the rejections of dismissal arguments pertain to cases that were filed much earlier. For example, in the MDL, as Judge Saris pointed out, that complaint was filed in 2018 or 2019, so the period of accrual was three years earlier. We're talking about what the PPMs were doing. Are you aware of any cases that have survived that were filed are about the same time as the Massachusetts one? So I think it is true that, as my friend pointed out, the Alaska case did survive, but it's important that that was the RICO claim that the district court allowed to proceed there. It did so, we respectfully disagree with the district court on that point. It did so under Ninth Circuit law that we think is much more permissive than this court's law, for reasons we elaborate in our briefing. It's also true that the district court in West Virginia allowed that claim to proceed, but it did so under an understanding of West Virginia law that it was not necessary for a plaintiff to plead the allegations supporting fraudulent concealment. I don't think that's true of West Virginia law, but it doesn't really matter because I know it's not true of Massachusetts law based on what the Massachusetts Supreme Judicial Court and this court have said. So while it's true that there are other cases under other laws, we'd respectfully submit Judge Sarris got it right under Massachusetts law in this case, which is all that matters. Thank you. Thank you, Your Honor. Thank you, Counsel. At this time, would Counsel for the Appley Cross Appellant please introduce himself on the record to begin? He has three minutes. Good morning and may it please the court. My name's Keith Blackwell and I represent OptumRx in connection with its cross appeal. With the very short amount of time that I have this morning, I'd like to address the one prong of Rule 1.11c on which the district court based its decision denying the motion for disqualification. And that was the material disadvantage prong. And I would like to urge the court to take a very careful look at the judge's analysis, which was based largely on the analysis by Judge Polster in the MDL case and other courts that have followed Judge Polster's analysis. But I would ask the court, should it be necessary to resolve the cross appeal? Which we think it's probably not necessary to reach the cross appeal. I was gonna ask you if you find in your clients, we affirm, then we don't have to decide this issue, correct? I think that's exactly right, Judge. Because we are only seeking, even on appeal, a prospective disqualification should this case go forward of Motley Rice. The city of Boston has and has always had, in this case, other counsel representing it. So it doesn't call into question the positions the city has taken on 12b6. And so for that reason, we think that there would be no reason for this court to reach the cross appeal if it affirms the dismissal of the complaint. You don't think this case is going to the Supreme Court? Well, if it did go to the Supreme Court, Judge Lynch. You're seeking to disqualify counsel, correct? We are, we are. So if it did go to the Supreme Court on the 12b6 issue, and if the Supreme Court accepted that review, then an issue that this court found it unnecessary to reach in the direct appeal. They would remand it to us to decide the issue. Well, it's, I guess it's certainly possible. If the Supreme Court thought it was a cert-worthy issue, there might become, a question might arise about who is the right counsel to be representing the city of Boston in that. With my very little time, I would ask the court to focus on the text of Rule 111 as compared to the standard that the court actually applied and the MDL court actually applied. The MDL court and the district court in this case applied a standard of inquiring whether a particular lawyer's access to confidential government information is materially disadvantaged in the OptumRx in a relative sense, relative to other lawyers and their access. That's not what the rule says. With all respect to the district court, the rule focuses on whether the information could be used to the material disadvantage. We think the text of that rule suggests a straightforward relevance test. We would also ask the court to consider that this is a rule that needs to be applied and has to be applied in the main at the point when a lawyer takes on an engagement. And it's very difficult for a lawyer to do that, to know whether to accept the engagement, if in fact it depends on whether materials are later going to become discoverable, discovered, and then known to other parties. Okay, not to prolong this, but even if it's not a relative standard, the information was available. So how do you win on your argument? So the information, and I think, I think Judge Lynch, you may be referring here to the confidential government information definition. In the MDL docket. Right, right. And Judge Polster certainly held that this information did not qualify as confidential government information because it was discoverable and it did not work any material disadvantage because it actually was discovered and produced. I will say that one thing I think all the courts have neglected, Judge Lynch, is that we are not merely talking about the documents that my client produced in those investigations. Now, to be sure, that's all we know that the investigators became aware of because these are confidential investigations. I understand where you're going, thank you. Thank you very much. Okay, rebuttal. Thank you, counsel. At this time, would counsel for the city of Boston please reintroduce herself on the record? She's a three-minute rebuttal. Mimi Liu for the city of Boston. Defendants themselves argued that the standard is beyond doubt at page 19 of their opposition brief. And the de Moulis case to which they referred also refers to the fact that there can be no substantial doubt as to the existence of the wrongdoing. It is clearly not beyond a doubt here. With respect to the various pieces that they pointed to in our complaint, you heard them mention this 2011 CMS notification. That notification was to the defendants. The 2016 article by David Armstrong had to do specifically with conduct in West Virginia and so on. First of all, these are all fact disputes. The fact that we cited them in our complaint, we do not say we had notice of these things, nor that they gave us the evidentiary basis for our complaint at the time they came out. We are citing them now, that we are aware of these now. So this is all an issue, a fact dispute. With respect to all the other courts that have gone in the favor of the plaintiff on the statute of limitations issue, the Alaska case, the only relevant point the court needs to know there is it was applying a constructive knowledge standard, not an actual knowledge standard, and said, hey look, all of this new significant discovery produced by the PBMs in 2023, that's a fact question whether that is what in fact gave the plaintiff notice of its claims. And here, again, under transpect, we specifically say in our complaint, we learned of the wrongdoing from that new discovery provided in 2023. That's where evidentiary basis comes from. But that's not the question. The question is whether there was knowledge before you say you learned which, of which you had notice, you had access, it was available publicly. With all due respect, Your Honor, you can't use the no substantial doubt language in opinions to alter the obligation you have to actually be aware of what's going on around you. And if you have all of the warning signals that you have a cause of action, you have to act. So Your Honor, in Ray Beef, the case that we cite addresses this question very clearly. First, even under a constructive knowledge standard, it is not enough to be aware, even if we could characterize these earlier complaints as similar, it is not enough to be aware of similar complaints. Let's talk about the Massachusetts actual knowledge standard, okay? So that's under a lower standard. The case goes on, Your Honor, to say you have to look at those earlier filed complaints to see if they provided an evidentiary basis for the claims that are being alleged here. And we would submit that if you look at the four paragraphs in those earlier complaints that are cited by defendant, they are sparse. They refer to a 2016 article about misconduct in West Virginia. Yeah, okay, you've made those arguments. And I would just add, Your Honor, if I may, that in the Ohio County Commission case, which was actually a case brought by an agency in West Virginia, even in that case, the court held that the fact that other cases had been brought by the same counsel in the same jurisdiction was not enough to find that the statute of limitations had run as a matter of law, that these are all fact questions that need to be left for summary judgment or for trial. Thank you, Your Honor.  Thank you, Court. We're gonna take a five-minute recess.